IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ERIC HEATH,

     Plaintiff,

         v.

ILG TECHNOLOGIES, LLC
doing business as
ILG Information Technologies,

     Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-3130-TWT

WOROMA EJIOWHOR,

     Plaintiff,

         v.

ILG TECHNOLOGIES, LLC
doing business as
ILG Information Technologies,

     Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-3651-TWT

KIRAN CHAITRAM,

     Plaintiff,

         v.

ILG TECHNOLOGIES, LLC
doing business as
ILG Information Technologies,

     Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-3652-TWT

JB HILLIARD,

> Plaintiff,

> > v.

CIVIL ACTION FILE
NO. 1:20-CV-3654-TWT

ILG TECHNOLOGIES, LLC
doing business as
ILG Information Technologies,

> Defendant.

OLIVIA MOONEY,

> Plaintiff,

> > v.

CIVIL ACTION FILE
NO. 1:20-CV-3656-TWT

ILG TECHNOLOGIES, LLC
doing business as
ILG Information Technologies,

> Defendant.

TERRELL THOMAS,

> Plaintiff,

> > v.

CIVIL ACTION FILE
NO. 1:20-CV-3655-TWT

ILG TECHNOLOGIES, LLC
doing business as
ILG Information Technologies,

> Defendant.

JEFFREY T. MCADAMS,

     Plaintiff,

          v.

ILG TECHNOLOGIES, LLC
doing business as
ILG Information Technologies,

     Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-3131-TWT

## OPINION AND ORDER

These are negligence and breach of contract actions. They are before the Court on the Plaintiffs' Motions to Remand [1:20-CV-3130, Doc. 11; 1:20-CV-3131, Doc. 12; 1:20-CV-3651, Doc. 7; 1:20-CV-3652, Doc. 5; 1:20-CV-3654, Doc. 5; 1:20-CV-3655, Doc. 5; 1:20-CV-3656, Doc. 5] and the Defendant's Motions to Dismiss [1:20-CV-3130, Doc. 4; 1:20-CV-3131, Doc. 3; 1:20-CV-3651, Doc. 5; 1:20-CV-3652, Doc. 4; 1:20-CV-3654, Doc. 4; 1:20-CV-3655, Doc. 4; 1:20-CV-3656, Doc. 4]. For the reasons set forth below, the Plaintiffs' Motions to Remand [1:20-CV-3130, Doc. 11; 1:20-CV-3131, Doc. 12; 1:20-CV-3651, Doc. 7; 1:20-CV-3652, Doc. 5; 1:20-CV-3654, Doc. 5; 1:20-CV-3655, Doc. 5; 1:20-CV-3656, Doc. 5] are DENIED and the Defendant's Motions to Dismiss [1:20-CV-3130, Doc. 4; 1:20-CV-3131, Doc. 3; 1:20-CV-3651, Doc. 5; 1:20-CV-3652, Doc. 4; 1:20-CV-3654, Doc. 4; 1:20-CV-3655, Doc. 4; 1:20-CV-3656, Doc. 4] are GRANTED in part and DENIED in part.

3

# I.   Background

## A. Common Factual Background

These cases come before the Court with identical basic facts, identical counsel, and nearly identical pleadings. Eric Heath, Jeffrey McAdams, Woroma Ejiowhor, Kiran Chaitram, JB Hilliard, Terrell Thomas, and Olivia Mooney ("the Plaintiffs") were examinees who took the Georgia Bar Examination ("the Exam") in July 2015 or February 2016. (*See, e.g.*, Heath Compl. ¶ 6; Chaitram Compl. ¶ 5.) Subsequently, the Plaintiffs were erroneously informed that they had failed the Exam. (*See, e.g.*, Heath Compl. ¶ 7; Hilliard Compl. ¶ 6.) As a result of these errors, the Plaintiffs undertook efforts to retake the Exam. (*See, e.g.*, Mooney Compl. ¶ 7; Thomas Compl. ¶ 8.) In September 2016, the Plaintiffs were notified that they had passed their first attempts of the Exam. (*See, e.g.*, Heath Compl. ¶ 9; Chaitram Compl. ¶ 8.)

The July 2015 and February 2016 administrations of the Exam contained three component sections: the Multistate Bar Examination ("MBE"), the Multistate Performance Test ("MPT"), and an essay portion. (Heath Compl. ¶ 14; Chaitram Compl. ¶ 13.) The Georgia Board of Bar Examiners ("GBBE") graded each applicant's MPT and essay portion answers to generate a raw score, and those scores were then scaled to create consistency across administrations of the Exam. (Heath Compl. ¶¶ 18–19.) The Office of Bar Admissions ("OBA") and the GBBE contracted with the Defendant, ILG Technologies, LLC ("ILG"), for software solutions that supported the Exam's

4

administration and the scaling and reporting of examinee scores. (Heath Compl. ¶¶ 11-13.)

The Plaintiffs allege that the OBA and GBBE used the Defendant's software to scale the examinees' raw scores for the July 2015 and February 2016 administrations of the Exam and to automatically send letters to each examinee indicating their Exam results. (Heath Compl. ¶ 20; Chaitram Compl. ¶ 19.) The Plaintiffs further allege that an error in the Defendant's processes led to letters that erroneously informed the Plaintiffs they had failed the Exam. (Heath Compl. ¶ 21.) As a result of these erroneous notifications, the Plaintiffs allege a variety of personal, professional, and financial injuries. (Heath Compl. ¶ 22; Ejiowhor Compl. ¶ 22; Chaitram Compl. ¶¶ 21–22; Hilliard Compl. ¶¶ 21–22; Thomas Compl. ¶¶ 22–24; Mooney Compl. ¶ 21.) The Plaintiffs individually raise claims for negligence, negligent misrepresentation, breach of contract, strict liability, negligent design, and attorneys' fees. (*See, e.g.*, Mooney Compl. ¶¶ 22–43.) The Defendant timely removed these actions to this Court. (*See, e.g.*, Notice of Removal of Pl. Heath's Compl., ¶ 9.)

## B. Previous Related Litigation

An understanding of past litigation regarding these events is required to evaluate the issues before the Court. In September 2016, another examinee who alleged he was erroneously informed he failed the Exam brought a class action suit against the Defendant and its owner in Bryan County State Court. (Def.'s Brief in Opp'n to Pl. Heath's Mot. to Remand, Ex. 1.) The complaint

noted that the total amount in controversy was less than $5 million and each individual's claim was for less than $75,000. (*Id.*, Ex. 1 ¶ 1.) The plaintiff then voluntarily dismissed his complaint and, joined by a second plaintiff, filed a new putative class action against the defendants in Bryan County Superior Court. (*Id.* at 2–3.) This second complaint contained an identical jurisdictional statement indicating a total amount in controversy of less than $5 million and no individual claim exceeding $75,000. (*Id.*, Ex. 2 ¶ 1.)

The parties litigated this case in state court for seven months. (*Id.* at 3.) On May 2, 2018, the plaintiffs' counsel sent the defendants' counsel—the same counsel representing the Plaintiffs and Defendant here—an email ("the May 2 Email"). In the May 2 Email, the plaintiffs' counsel wrote, in reference to the putative class members in the ongoing litigation, "I believe these cases are worth somewhere just north or south of $300,000.00 a piece. The math is simple – that's $27 million bucks." (*Id.,* Ex. 3.) Armed with this email, the defendants removed the case to federal court, arguing the May 2 Email established that the jurisdictional amount-in-controversy requirement had been satisfied. (*Id.* at 4.) In response, the plaintiffs sought a remand, arguing that the defendants should "have been able to ascertain intelligently that the amount in controversy exceeds $75,000" for over a year, and thus its notice of removal was untimely. (*Id.*, Ex. 4 at 1–2.) Ultimately, the plaintiffs' motions to remand and certify the class were denied, and the court granted the defendants summary judgment on the plaintiffs' claims. *See Murray v. ILG Techs., LLC,*

378 F. Supp. 3d. 1227 (S.D. Ga. 2019) [hereinafter *Murray I*], *aff'd*, 798 F. App'x 486 (11th Cir. 2020) [hereinafter *Murray II*].

## II.   Legal Standards

### A.  Motion to Remand

Federal courts are courts of limited jurisdiction; they may only hear cases that the Constitution and the Congress of the United States have authorized them to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action originally brought in state court may be removed by a defendant to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441. Because of the limited authority of federal courts, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Where no federal question exists, diversity jurisdiction can be invoked where there is complete diversity among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

### B.  Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is

7

T:\ORDERS\20\Heath\mtdtwt.docx

"improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

#### A. Motion to Remand

The diversity of the parties is not in dispute in any of the Plaintiffs' actions. Therefore, the only issue is whether the amount in controversy requirement has been satisfied. The Plaintiffs argue that because their pleadings state that their claims are for less than $75,000, the amount-in-controversy requirement is not satisfied. (*See, e.g.*, Pl. Heath's Mot. to Remand, at 6.) The Plaintiffs refer to the Defendant's allegedly contrary arguments in

8

the related *Murray* litigation, where it argued it could not remove that case on the basis of the complaint, but rather on the existence of the May 2 Email claiming $300,000 in damages per plaintiff. (*Id.* at 7–8.) In response, the Defendant claims that the existence of May 2 Email from the Murray litigation establishes that the Plaintiffs and their counsel "do not believe their own pleading[s]" and that the limitation "demonstrates [a] lack of good faith." (Def. Br. in Opp'n to Pl. Heath's Mot. to Remand, at 3, 7–8.) Because that putative class included the Plaintiffs here, the Defendant argues that email constitutes proper and sufficient evidence that the amount-in-controversy requirement has been met.[1] (*Id.* at 12.) From these arguments, two distinct legal issues emerge. First, what is the proper evidentiary burden a removing defendant must satisfy here? And second, what evidence can be properly considered when evaluating whether the defendant has satisfied that burden? The Court will analyze each in turn.

## 1. Determining the Proper Standard

In support of its motion to remand, the Plaintiffs cite to several Eleventh Circuit opinions that describe the evidentiary burden in removal actions. First,

---

[1]     The *Murray* plaintiffs proposed the following class: "All individuals in Georgia who (1) took the Georgia bar exam on July 28 and 29, 2015 and on February 23 and 24, 2016; (2) who were wrongly informed that they had failed to achieve a passing score on the exam; and (3) who received this incorrect information as a result of a mistake on behalf of ILG whose scaled score was miscalculated with software provided by Defendants." (Notice of Removal, Ex. 1, ¶ 29.)

T:\ORDERS\20\Heath\mtdtwt.docx

the Plaintiffs cite to the Eleventh Circuit's decision in *Lowery v. Ala. Power Company*, 483 F.3d 1184, 1213 (11th Cir. 2007), which adopts a preponderance of the evidence standard but makes clear that the removing defendant's evidence must "unambiguously establish federal jurisdiction." The Plaintiffs cite to this "unambiguously establish" standard in arguing that neither the Defendant nor this Court can speculate whether the amount in controversy is satisfied. (Pl. Heath's Mot. to Remand, at 4–5.) Second, the Plaintiffs point to *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994), which held that when a plaintiff expressly seeks less than the jurisdictional amount in his complaint, the removing defendant "must prove to a legal certainty that plaintiff's claim" exceeds the jurisdictional amount to prevail over a motion to remand. The Plaintiffs cite to this case to highlight the Defendant's allegedly contradictory arguments in the *Murray* litigation and here, and to bolster their claim that their pleadings seeking less than $75,000 should be given decisive weight in this analysis. (Pl. Heath's Mot. to Remand, at 8.)

This Court notes that district courts across the Eleventh Circuit have struggled to apply these standards uniformly. *See Smith v. GEICO General Ins. Co.*, Civ. A. No. 8:18-cv-2420, 2019 WL 9467927, at *5 n.4 (M.D. Fla. Jan. 11, 2019) ("The Court recognizes a 'flux' within the Eleventh Circuit over the proper application of *Lowery's* 'unambiguously establish' standard versus the 'preponderance of the evidence' standard."); *Jackson v. Wilmington Tr., Nat'l Ass'n*, Civ. A. No 1:17-cv-2616, 2017 WL 8218941, at *6 (N.D. Ga. Oct. 24, 2017)

T:\ORDERS\20\Heath\mtdtwt.docx

(collecting district court opinions applying the *Burns* "legal certainty" standard and others applying a preponderance of the evidence burden on removing parties). But removal is ultimately a creature of statute, and in 2011, Congress passed the Federal Courts Jurisdiction and Venue Clarification Act, which outlined the proper procedures and burdens placed on removing defendants:

> If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—(A) the notice of removal may assert the amount in controversy if the initial pleading seeks—(i)nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by *the preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2). The Supreme Court has applied this burden and procedure where the parties contest the amount in controversy. *See Dart Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014). In cases where "a defendant's assertion of the amount in controversy is challenged[,] . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *See id.*

Here, the Defendant seeks removal on the basis of § 1332(a), and Georgia permits recovery of damages in excess of the amount demanded. *See* O.C.G.A. § 9-11-54(c)(1). Thus, this Court must determine how the statutory amendments to § 1446(c)(2) and the Supreme Court's decision in *Dart Basin*

11

T:\ORDERS\20\Heath\mtdtwt.docx

*Operating Co.* interact with earlier Eleventh Circuit precedent. First, it appears that the *Burns* "legal certainty" test has been implicitly overruled by the amendments to the removal statute codifying the preponderance of the evidence standard. *See Dart Basin Operating Co.*, 574 U.S. at 88–89 (noting that the House Judiciary Committee Report on 28 U.S.C. § 1446(c)(2) indicated that defendants "do not need to prove to a legal certainty that the amount in controversy requirement has been met"). Therefore, the Plaintiffs' pleadings for less than $75,000 cannot be given decisive weight—they will be treated merely as pieces of evidence supporting remand. As described in *Dart Basin Operating Co.*, 574 U.S. at 88, this Court will consider the evidence presented by both sides and determine whether the requirement has been met by a preponderance of the evidence.

Second, this Court will apply the *Lowery* "unambiguously establish" standard to the parties' evidence weighed by the preponderance of the evidence standard. District courts have struggled with the simultaneous application of the preponderance of the evidence and "unambiguously establish" standards from *Lowery*. *See Moore v. Wal-Mart Stores East, LP*, Civ. A. No. 2:15-CV-163, 2015 WL 5813164, at *6 n.4 (M.D. Al. Oct. 5, 2015) (collecting cases that take varying approaches in reconciling the two standards); *Allen v. Thomas*, Civ. A. No. 3:10-CV-742, 2011 WL 197964, at *5 (M.D. Ala. Jan. 20, 2011) ("Even *Lowery* itself recognized that the 'unambiguously establish' standard and the less rigorous preponderance of the evidence standard were at odds."). However,

12

it appears to this Court that the "unambiguously establish" standard applies to the evidence considered by the preponderance of the evidence standard. As the *Lowery* panel made clear after stating the "unambiguously establish" standard, "the existence of jurisdiction should not be divined by looking to the stars." *Lowery*, 483 F.3d at 1215. Under this application, documents supporting or contesting removal must demonstrate—without the need for judicial speculation, assumption, or gap-filling—that the amount in controversy is above or below the jurisdictional amount. Only evidence that clearly articulates such an amount will be considered at the motion to remand stage. Thus, when the "unambiguously establish" standard is utilized to eliminate speculation or conjecture about specific evidence describing the amount in controversy, it can coexist with an application of the preponderance of the evidence standard as described in *Lowery*.

## 2.  Proper Evidence in Considering Motion to Remand

Under 28 U.S.C. § 1446(b)(3):

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable.

(emphasis added). "What constitutes 'other paper,' . . . has been developed judicially. Courts have not articulated a single test for identifying 'other paper,' but numerous types of documents have been held to qualify." *Lowery*, 483 F.3d

13

at 1212 n.62. One type of document deemed "other paper" is emails estimating damages. *See id.* (citing *Callahan v. Countrywide Home Loans, Inc.*, Civ. A. No. 3:06-105, 2006 WL 1776747, at *3–4 (N.D. Fla. 2006 June 26, 2006)).

In these cases, a crucial piece of evidence supporting removal is the May 2 Email that, in the context of a different case, estimated each putative class member's damages at approximately $300,000. If the May 2 Email is deemed "other paper" under § 1446(b)(3), this email would "unambiguously establish" a sufficient amount in controversy and would be weighed against the Plaintiffs' pleadings requesting less than $75,000. The issue here is whether an email from a different case based upon identical facts can qualify as "other paper" in this case. In *Callahan v. Countrywide Home Loans, Inc.*, 2006 WL 1776747, at *3–4, where an email estimating damages was found to be "other paper," the email was sent during the case that was successfully removed, not a prior related case.

The Plaintiffs here argue that a presuit demand letter cannot qualify as "other paper" under § 1446(b)(3), while the Defendant argues the discrepancy between the May 2 Email and the Plaintiffs' complaints "demonstrates [a] lack of good faith in pleading a limited amount in controversy." (Pl. Heath's Mot. to Remand, at 9; Def.'s Br. in Opp'n to Pl. Heath's Mot. to Remand at 8.) In response to the Defendant's claims that the May 2 Email has not been withdrawn or deemed posturing by the Plaintiffs, the Plaintiffs refer to the May 2 Email as "puffing" and offer, for the first time, to agree to accept no more

14

than $74,999. (*See* Def.'s Br. in Opp'n to Pl. Heath's Mot. to Remand, at 4; Pl. Heath's Reply Br. in Supp. of Pl. Heath's Mot. to Remand, at 3, 5; *see also* Pl. Mooney's Reply Br. in Supp. of Pl. Mooney's Mot. to Remand, at 3, 5.)

Without clear Eleventh Circuit precedent on this specific question, this Court will rely on the principles expressed by the Eleventh Circuit in evaluating removal cases. The Eleventh Circuit has long accepted a broad range of evidence when evaluating the propriety of a defendant's removal. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) ("The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation—provided of course that removal is procedurally proper."). This broad acceptance is mirrored in other Circuits across the country. *See id.* (collecting cases from nine other circuits). In *Pretka*, the Eleventh Circuit noted the longstanding principle across federal courts that the defendants themselves "could offer their own affidavits or other evidence to establish federal removal jurisdiction." *Id.* at 759. And without subsequent limitations imposed by Congress, the Eleventh Circuit held that this principle remains in place today. *Id.* Thus, given the Eleventh Circuit's embrace of various forms of evidence establishing removal jurisdiction, the May 2 Email represents proper evidence before this Court in determining federal removal jurisdiction.

15

These principles of broad acceptance also apply to the other documents properly submitted alongside the Defendant's notices of removal, such as the *Murray* complaint alleging similar damages under the same factual circumstances and the district court ruling denying the *Murray* plaintiffs' motion to remand. Because the Plaintiffs were putative class members of that suit, and the facts between the cases are largely identical, the statements and estimates made in the course of that litigation are at least somewhat probative of the issue here.

### 3.  Weighing the Removal Evidence

With the universe of removal evidence now defined, this Court must weigh that evidence to determine whether federal jurisdiction exists. Eleventh Circuit precedent allows a district court to utilize its "judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). "Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *Id.* (internal quotation marks and punctuation omitted). Where the award factors indicate to the district court that the amount-in-controversy requirement is met, "preventing a district judge from acknowledging the value of the claim . . . would force the court to abdicate its statutory right to hear the case." *Id.* at 1064.

Subjecting the Defendant to a preponderance of the evidence burden,

16

this Court finds that the Defendant has met its burden. With the May 2 Email, properly submitted with the Defendant's Notice of Removal, the Defendant has used the Plaintiffs' counsel's own estimate to indicate the amount in controversy for each Plaintiff is four times the jurisdictional requirement. (*See, e.g.*, Pl. Heath's Notice of Removal, Ex. 2.) This estimate was based on the same underlying facts and included the Plaintiffs as then-unnamed class members. Even if the May 2 Email represented some amount of puffing—inflating the damages by up to 400%—the estimate of their damages is still in excess of $75,000 per Plaintiff.

    Without the benefit of any further jurisdictional discovery, the evidence on both sides is thin. But within this available evidence, several factors cut strongly against the Plaintiffs' case. First, as the Defendant noted, the Plaintiffs have failed to timely file initial disclosures with the Court, which would include a computation of each category of damages claimed. (Def.'s Br. in Opp'n to Pl. Heath's Mot. to Remand, at 5.) Local Rules 26.1(A) and 26.1(B)(4) require that these disclosures be filed within 30 days of a defendant's removal of the case to federal court. As of October 4, 2020, the initial disclosures in all of the Plaintiffs' cases became untimely. Given the importance of the damages computations to the Plaintiffs' Motions to Remand, these disclosures would have benefitted the Plaintiffs—assuming the evidence would demonstrate federal jurisdiction was lacking.

    This failure to file initial disclosures complements the second element

17

cutting against the Plaintiffs' cases: the *Murray I* court's finding that the Plaintiffs' argument was "that although their filings repeatedly indicate Plaintiffs seek less than $75,000 per person, Defendants should know that Plaintiffs really didn't mean that and were pleading it as a 'strategy.'" (Def.'s Notice to Remand Pl. Heath's Compl., Ex. C, at 2.) The damages claimed by the *Murray* plaintiffs closely resemble the damages claimed by Plaintiffs here. For example, the *Murray* plaintiffs claimed damages resulting from costs associated with retaking the Exam, costs associated from taking additional Exam preparation courses, loss of income, injury to property right of employment in the legal industry, injury to reputation, and physical injuries such as nausea and headaches. (Def.'s Notice to Removal Pl. Heath's Compl., Ex. 1 ¶¶ 39, 44.) In the Complaints here, all Plaintiffs allege the same injuries.[2] (See Pl. Heath's Compl. ¶¶ 8–9, 26; Pl. Chaitram's Compl. ¶¶ 7–8, 26; Pl. Mooney's Compl. ¶¶ 7, 25.) Given the identical factual foundation, the same counsel, and the substantially similar damages claims between the *Murray* complaint and the Complaints here, this Court will apply less weight to the

---

[2]    There are slight differences in the character of personal injuries claimed across the Complaints, ranging from loss of sleep to depression and suicidal ideation. Further, facts unique to individual plaintiffs likely increase the potential damages available in excess of the amount available for the commonly alleged damages. For example, Plaintiff Chaitram, the only Plaintiff previously licensed to practice law, alleges damages specifically resulting from an injury to his reputation as an already licensed attorney. (Pl. Chaitram Compl. ¶ 26.) Plaintiff Thomas also alleges he was forced to take out a $15,000 loan to cover living expenses as a result of the Defendant's actions. (Pl. Thomas Compl. ¶ 24.)

18

Plaintiffs' pleaded limitation of $75,000.

Third, the Plaintiffs' stipulations that they will not accept more than $74,999 has no bearing on whether this action can be successfully removed. As Eleventh Circuit precedent makes clear, the amount in controversy must be measured "at the time of removal, not later." *Pretka*, 608 F.3d at 751. At the time of removal, this stipulation had not been made. In fact, despite a recitation of a jurisdictional statement that "[t]he amount in controversy is less than $75,000," the *ad damnum* clause indicates no desire to limit damages on the claims. (*See, e.g.*, Pl. Heath's Compl. ¶ 4; *id.* at 8 (seeking relief "[t]hat Plaintiff be awarded an appropriate sum to compensate him for the injuries and damages sustained as a result of Defendant's wrongful and tortious acts")). The Plaintiffs' stipulations do not clarify the amount in controversy at the time of removal, but merely represent novel offers to not accept more than the federal jurisdictional minimum. And as mentioned above, Georgia law permits plaintiffs to recover more damages than they plead. *See* O.C.G.A. § 9-11-54(c)(1). Thus, at the time of removal, the Plaintiffs had given no indication that damages would be capped at $74,999. As such, the Defendant could properly remove this case, and the offers to stipulate to damages less than $75,000 cannot deprive this Court of jurisdiction.

Ultimately, these claims are based on the same facts as those in *Murray I*, a case which was properly removed to federal court for having satisfied the requirements of diversity jurisdiction. Rather than provide evidence to support

their statements that the amount in controversy is below $75,000 for each claim, the Plaintiffs continue rely on the jurisdictional statements in the Complaints and the Defendant's alleged hypocrisy between *Murray I* and this case. Though the burden is on the Defendant here, this Court finds that the May 2 Email and the evidence from *Murray I*, appraised using under Eleventh Circuit precedent, satisfies that burden, and the Plaintiffs have not presented any further evidence to counteract that showing. Thus, the Plaintiffs' Motions to Remand are denied.

### B. Motion to Dismiss

Having established jurisdiction, this Court now moves to the merits. The Plaintiffs all bring claims for negligence, negligent misrepresentation, breach of contract, strict liability, negligent design, and attorneys' fees against the Defendant. (*See, e.g.*, Mooney Compl. ¶¶ 22–43.) The Defendant seeks to dismiss each claim, and this Court will analyze each in turn. Because the putative class in *Murray I* was never certified, claim preclusion cannot apply to these Plaintiffs as unnamed class members in that action. *See Murray v. ILG Techs., LLC*, 378 F. Supp. 3d. 1227, 1253 (S.D. Ga. 2019); *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 n.7 (11th Cir. 2007); *United States v. E. Baton Rouge Parish School Bd.*, 594 F.2d 56, 58–59 (5th Cir. 1979). And though the Eleventh Circuit's decision in *Murray II* is binding authority, this Court acknowledges that these cases come before the Court on motions to dismiss, not motions for summary judgment as in the *Murray* litigation.

### 1.  The Plaintiffs' § 324A Claim

This Court will begin with the Plaintiffs' sole claim not previously made in the *Murray* litigation. In an effort to avoid that binding precedent and identify duties not previously rejected by the courts, the Plaintiffs allege that the Defendant is liable under Section 324A of the Restatement (Second) of Torts, as adopted by the Georgia Supreme Court, which states:

> Liability to Third Person for Negligent Performance of Undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*See Huggins v. Aetna Cas. & Sur. Co.*, 245 Ga. 248 (1980). The Plaintiffs allege that § 324A's adoption has imposed a legal duty upon the Defendant as a result of its undertaking to calculate and report Exam scores for the OBA, and that the Defendant has breached that duty and caused them harm. (Pl. Heath's Br. in Opp'n to Def.'s Mot. to Dismiss, at 9.) However, to state a claim under § 324A, a plaintiff must satisfy two apparent conditions precedent: that the Defendant's actions caused "physical harm," and that the Defendant's actions can be categorized by one of § 324A's three subparagraphs.

### a.  Section 324A's Physical Harm Requirement

Despite the apparent limitation of § 324A to "physical harm resulting

21

from [one's] failure to exercise reasonable care to protect his undertaking," the Plaintiffs argue that liability can still attach in the absence of physical harm. In support, the Plaintiffs cite a recent case from this District refusing to require a plaintiff to allege physical harm when stating a negligent performance of an undertaking claim. (Pl. Heath's Br. in Opp'n to Def.'s Mot. to Dismiss, at 7–9.) In that case, the court noted that some states make § 324A available only to a plaintiff who has suffered "physical harm." *City of Jacksonville v. Mun. Elec. Auth. of Ga.*, Civ. A. No. 1:19-CV-3234, 2019 WL 7819486, at *9 (N.D. Ga. Nov. 25, 2019). However, the court went on to highlight that the defendant did not identify "any Georgia cases limiting this doctrine to plaintiffs who allege physical harm." *Id.* Further, the plaintiff had cited two Georgia Court of Appeals cases that allowed negligent performance of undertaking claims to proceed without physical harm. *Id.* at *10. Thus, because no Georgia court had explicitly limited § 324A liability to physical harm and two cases allowed such claims to proceed, the court denied the defendant's motion to dismiss for lack of alleged physical harm. *Id.*

The Plaintiffs here argue that the *City of Jacksonville* ruling frees them of a requirement to show physical harm. (Pl. Heath's Br. in Opp'n to Def.'s Mot. to Dismiss, at 9–10.) However, "[u]nlike circuit court panels where one panel will not overrule another, district courts are not held to the same standard." *Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co.*, 240 F.3d 956, 965 (11th Cir. 2001) (internal citations omitted). And after a thorough review of the

22

*City of Jacksonville* opinion, this Court finds good reason to hold that physical harm is required to state a claim under § 324A.

First, as the *City of Jacksonville* ruling correctly noted, there is no express limitation to physical harm in Georgia decisions applying § 324A.[3] However, that express limitation appears in the text of § 324A, which imposes "liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking." Indeed, there are implicit indications of this limitation throughout the common law. For example, courts have referred § 324A liability as "Good Samaritan liability," which appears to align more with an undertaking to prevent or mitigate physical harm rather than non-physical harm. *See, e.g.*, *Howell v. United States*, 932 F.2d 915, 918 (11th Cir. 1991); *Davenport v. Cummins Alabama, Inc.*, 284 Ga. App. 666, 668 (2007). This implication is further borne out by the cases in which § 324A is applied, such as medical malpractice,[4] negligent inspection,[5] and premises liability cases.[6] And its further emphasized by the descriptions of § 324A's

---

[3]     The *City of Jacksonville* court does note one federal decision that makes this limitation clear. *See U.S. Aviation Underwriters, Inc. v. United States*, 530 F. Supp. 2d 1315, 1320 (M.D. Ga. 2007), *aff'd*, 562 F.3d 1297 (11th Cir. 2009).

[4]     *Herrington v. Gaulden*, 294 Ga. 285, 288 (2013); *Crewey v. Am. Med. Response of Ga., Inc.*, 303 Ga. App. 258 (2010).

[5]     *Universal Underwriters Ins. Co. v. Smith*, 253 Ga. 588 (1984); *Huggins*, 245 Ga. at 248; *BP Exploration & Oil, Inc. v. Jones*, 252 Ga. App. 824 (2001).

[6]     *Davidson v. Meticulously Clean Sweepers, Inc.*, 329 Ga. App. 640, 644–45 (2014); *Taylor v. AmericasMart Real Estate*, 287 Ga. App. 555, 559–60 (2007).

subparagraphs. *See, e.g.*, *Herrington v. Gaulden*, 294 Ga. 285, 288 (2013) (noting that "Section 324A(a) applies when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed") (internal quotation marks omitted).

Second, the Georgia cases cited by the *City of Jacksonville* court for the proposition that § 324A does not require a showing of physical harm do not explicitly reference § 324A in any way. In the first Georgia case, *Stelts v. Epperson*, 201 Ga. App. 405 (1991), the court does not refer to the language of § 324A. Instead, it cites to Georgia Court of Appeals cases either decided before the Supreme Court's adoption of § 324A, cases that similarly do not refer to § 324A's language, and cases that involve physical harm.[7] *Id.* at 406. The second Georgia case, *Construction Lender, Inc. v. Sutter*, 228 Ga. App. 405, 407 (1997), relies entirely upon the first case's analysis to allow the negligent performance of an undertaking claim alleging non-physical harm to proceed. And like the first case, it never refers to the language of § 324A as adopted by the Supreme Court. Therefore, the two cases relied upon by the *City of Jacksonville* court appear to elide the text of § 324A in allowing claims alleging non-physical harms to proceed and do not clearly state an expansion of § 324A liability beyond its text.

---

[7]     One of these cases involving physical harm is the case where the Georgia Supreme Court adopted § 324A. *See Huggins*, 245 Ga. at 248. However, the *Stelts* decision makes no reference to the language of *Huggins* or § 324A.

Finally, Georgia courts apply the interpretive canon of *expressio unius est exclusio alterius* to contracts, which means "the express mention of one thing implies the exclusion of another." *Land USA, LLC v. Ga. Power Co.*, 297 Ga. 237, 241 (2015). Thus, the express mention of "physical harm" implies the exclusion of other types of harm. Given the plain language of § 324A, the overwhelming proportion of Georgia cases applying § 324A in cases where physical harm, and the contrary Georgia cases' omission of § 324A's text, this Court finds that physical harm is a requirement to state a claim under § 324A.

### b.  The Plaintiffs' Showing of Physical Harm

The Plaintiffs argue that even if a showing of physical harm is required, they have made such a showing. (*See, e.g.*, Pl. Heath's Br. in Opp'n to Def.'s Mot. to Dismiss, at 9.) In support of this contention, the Plaintiffs argue that they suffered physical injuries and emotional distress, as well as damages to their reputations and their property, and these injuries qualify as physical harm.

First, the Plaintiffs' alleged physical injuries resulted from the emotional harm of being incorrectly informed of failing the Exam. And as the court noted in *Murray I*, "courts have recognized that injuries such as headaches, nausea, and weight gain resulting from [psychic] trauma or emotional distress do not constitute physical injury, injury to a person, or bodily injury." *Murray I*, 378 F. Supp. 3d at 1247 (collecting Georgia cases), *aff'd*, 798 F. App'x at 493. Thus, the claimed injuries of loss of sleep or appetite,

25

depression, and nausea do not qualify as "physical harm."

With regards to the alleged injury to reputation, the Plaintiffs point to no Georgia case law that categorizes injury to reputation as a physical harm. *Cf.* BLACK'S LAW DICTIONARY, *Physical* (11th ed. 2019) ("Of, relating to, or involving the material universe and its phenomena[.]") Further, while Georgia courts have held that "such an injury [to reputation] is deemed an injury to the person, damages for this type of personal injury are recoverable only in actions alleging intentional or wanton misconduct." *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411, 416 (1983). Thus, even assuming Georgia courts would classify this injury to reputation as a "physical harm," the Plaintiffs could not recover damages as they have alleged nothing beyond mere negligence. *Id.* (noting that the appellant "presented his case solely on the basis of negligence" and was thus "unable to recover general damages for damage to reputation, mental and physical strain, humiliation, or decreased earning capacity"); *see also Murray II*, 798 F. App'x at 492 (holding that "the Bar Applicants could not recover for any alleged to their reputations, and such injury therefore cannot exempt their negligence claims from the economic loss rule").

Finally, regarding the alleged injury to property, the ability to practice law is not a property right in Georgia. To support their argument, the Plaintiffs cite to academic articles and a Georgia Supreme Court dissent from 1936. (Pl. Heath's Br. in Opp'n to Def.'s Mot. to Dismiss, at 16–17.) In contrast, the

26

Defendant points to Georgia Supreme Court rulings appearing to foreclose any property right in the practice of law. *See Eckles v. Atlanta Tech. Grp., Inc.*, 267 Ga. 801, 805 (1997). Thus, the Plaintiffs have not shown that they suffered any property damage from the Defendant's actions. Because the Plaintiffs have not provided evidence supporting a finding of physical harm here, the Plaintiffs do not state a claim under § 324A.

### 2.  The Plaintiffs' Negligence Claims

The remaining claims closely resemble the claims made in the *Murray* litigation. In their negligence claims, the Plaintiffs allege the Defendant was subject to a duty to correctly calculate and report their Exam scores. (*See, e.g.*, Pl. Ejiowhor's Compl. ¶ 23.) As a result of breaching these duties, the Plaintiffs claim physical and other injuries. (*See, e.g.*, Pl. Ejiowhor's Compl. ¶¶ 26, 30, 42.)

In its Motions to Dismiss, the Defendant argues that it owed the Plaintiffs no legally cognizable duty and that the Plaintiffs suffered no redressable injuries, and thus the Plaintiffs' negligence-based claims must fail. (Def.'s Mot. to Dismiss Pl. Heath's Compl., at 7, 11.) The Defendant relies heavily on the *Murray* opinions, which granted the Defendant summary judgment on these claims. (*Id.* at 2.) In response, the Plaintiffs argue that the doctrines that barred the claims in the *Murray* litigation—Georgia's economic loss rule and impact rule—cannot apply here. (Pl. Heath's Br. in Opp'n to Def.'s Mot. to Dismiss, at 12–22.)

27

There is no dispute that Georgia law applies here. The elements of a negligence claim in Georgia are axiomatic: "a duty, a breach of that duty, causation and damages." *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (2017) (internal quotation marks omitted).

> [T]he threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff. A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts.

*J.P. Morgan Chase Bank, N.A. v. Durie*, 350 Ga. App. 769, 772 (2019) (internal quotation marks omitted). "[T]he existence of a legal duty is a question of law for the court . . . ." *Lucky Capital Mgmt., LLC v. Miller & Martin PLLC*, 762 F. App'x 719, 725 (11th Cir. 2019) (quoting *Garner & Glover Co. v. Barrett*, 321 Ga. App. 205, 208 (2013)). A motion to dismiss should be granted when a plaintiff fails "to allege any cognizable statutory or common law duty." *Durie*, 350 Ga. App. at 772.

In their Complaints, the Plaintiffs allege the Defendant was subject to various broad duties, such as "a duty to the consuming public and [the Plaintiffs] in particular to exercise reasonable care" in the design and operation of the software "free of unreasonable risk of injury to users and others." (*See, e.g.*, Pl. Ejiowhor's Compl. ¶ 39.) However, Georgia law disapproves of "a general legal duty to all the world not to subject others to an unreasonable risk of harm." *Department of Labor v. McConnell*, 305 Ga. 812, 816 (2019); *see also*

28

*Murray II*, 798 F. App'x at 491. And as the Eleventh Circuit noted in its *Murray II* decision, the Plaintiffs there "failed to identify any duty breached . . . beyond those arising directly from the contract between [the Defendant] and the OBA." *Id.* at 492. The claims based on duties arising under the contract—the same contract as this case—were barred by Georgia's economic loss rule. *Id.* at 493.

This Court finds no distinguishing factor between the *Murray* litigation and the claims here to ignore that application of the economic loss rule. The economic loss rule states that where "the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract." O.C.G.A. § 51-1-11(a). Here, the Plaintiffs allege that the "Defendant contracted with the [OBA] and [GBBE] to provide software and support in administering computer-based testing, and to provide reporting and analytical services." (Hilliard Compl. ¶ 11.) The alleged duties breached by Defendant—the duty to accurately calculate and report the Exam scores—follow directly from the contract, and the economic loss rule limits recovery based on these duties to those in privity of contract.

The Plaintiffs seek to evade the economic loss rule in two ways. First, the Plaintiffs argue that they suffered injuries to their person and their property. (*See, e.g.,* Pl. Ejiowhor's Br. in Opp'n to Def.'s Mot. to Dismiss, at 12.) The Plaintiffs allege injuries to their persons as a result of reputational damage and injuries to their property as a result of their inability to practice

29

law. (*See, e.g.*, *id.* at 15–18.) However, as discussed above, damages for these harms are not recoverable under Georgia law; reputational damage is only recoverable when intentional or wanton conduct is alleged, and there is no property right in the ability to practice law. Second, the Plaintiffs allege their claims fall into a variety of exceptions to the economic loss rule. For example, the Plaintiffs argue that these claims fall into the "accident exception" to the economic loss rule. (*Id.* at 19.) But the Plaintiffs' allegations do not include "any evidence of a calamity, sudden violence, collision with another object, or some catastrophic event" as required by the exception. *Busbee v. Chrysler Corp.*, 240 Ga. App. 664, 666 (1999). The Plaintiffs also allege their claims for emotional distress evades Georgia's impact rule—which typically bars recovery for emotional distress in the absence of a physical impact—through the pecuniary loss exception. (*See, e.g.*, Pl. Thomas's Br. in Opp'n to Def.'s Mot. to Dismiss, at 13–14.) While this exception allows the recovery of damages from certain instances of emotional distress caused negligence, it provides for no additional duty outside the scope of the contract that supports a negligence claims and evades the economic loss rule. *See Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 585 n.3 (2000) (noting that the pecuniary loss exception "support[s] a claim for damages for emotional distress"). Ultimately, the Plaintiffs identify no legally cognizable duties outside the performance of the contract, and the economic loss rule bars their negligence claims. *See Durie*, 350 Ga. App. at 772.

30

### 3. The Plaintiffs' Negligent Design and Strict Liability Claims

The Plaintiffs have brought negligent design and strict liability claims against the Defendant. First, in their strict liability claims, the Plaintiffs allege that the Defendant is strictly liable under O.C.G.A. § 51-1-11 because "the software at issue was not merchantable or reasonably suited to the use intended, in that its sole purpose was to grade, scale, and report bar exam scores accurately." (Pl. Hilliard Compl. ¶ 35.) Second, in their negligent design claims, the Plaintiffs allege that the "Defendant breached its duty to exercise reasonable care to design, test, develop, inspect, market, distribute and sell the subject product free of an unreasonable risk of injury to users and others." (Pl. Hilliard Compl. ¶ 40.) This language is identical to the negligent design claim made in *Murray I,* 378 F. Supp. 3d at 1241 (quoting the *Murray* complaint).

However, just as Georgia's economic loss rule applies to the Plaintiffs' negligence claims, it also applies to the Plaintiffs' strict liability and negligent design claims. *See Murray II*, 798 F. App'x at 493. The economic loss rule requires one who "suffers purely economic losses [must] seek [his] remedy in contract and not in tort." *General Elec. Co. v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 78 (2005). The rule has been applied to both strict liability and negligent design claims in Georgia. *See Bates & Assocs., Inc. v. Romei*, 207 Ga. App. 81, 83 (1993); *Flintkote Co. v. Dravo Corp.*, 678 F. 2d 942, 949 (11th Cir. 1982). Thus, because the Plaintiffs identify no duty outside the scope of the contract, the economic loss rule bars its strict liability and negligent design claims. *See*

31

*Murray II*, 798 F. App'x at 493 (holding that the *Murray* defendants "did not violate a legal duty independent of the contract between ILG and the OBA," and therefore the economic loss rule barred the claims).

### 4. The Plaintiffs' Breach of Contract Claims

As another means of avoiding the economic loss rule, the Plaintiffs bring a contract claim against the Defendant. The Plaintiffs allege that they were intended third-party beneficiaries of this contract, and because the Defendant breached this contract, the Plaintiffs can recover damages resulting from this breach. (*See, e.g.*, Chaitram Compl. ¶¶ 31–34.) The Defendant challenges this categorization, arguing that the Plaintiffs have failed to "point to a term in the contract at issue that expressly defines [the Plaintiffs] or other bar applications as third-party beneficiaries of that contract." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss Pl. Chaitram's Compl., at 20.)

Under Georgia law, "the intent to create a third-party beneficiary must appear on the face of a contract," and parol evidence will not be considered in making this determination. *Perry Golf Course Dev., LLC v. Hous. Auth. of Atlanta*, 294 Ga. App. 387, 388 (2008). But because the contract is central to the Plaintiffs' claims here and its contents are undisputed, this Court can consider the contract at the motion to dismiss stage. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Plaintiffs allege that because the contract indicated the Defendant's software "will include a secure . . . system for OBA's correspondence with applicants to obtain Certification for Fitness to Practice

32

Law and to take the Georgia Bar Examination ('Bar Applicants')," the contract indicated an intent to create a third-party beneficiary. (Pl. Chaitram's Br. in Opp'n to Def.'s Mot. to Dismiss, at 23.)

But the mere mention of individuals who may benefit from the terms of a contract does not create third-party beneficiary status. *See Perry Golf Course Dev., LLC*, 294 Ga. App. at 288 (noting that one who benefits from the performance of a contract is not sufficient to create third-party beneficiary status). The Plaintiffs' Complaints do nothing more than make conclusory allegations that they were an intended third-party beneficiary, and the contract language merely indicates some benefit will be conferred to them. (*See, e.g.*, Chaitram Compl. ¶ 32.) In addition, Georgia courts "have repeatedly recognized that [contracts entered into with a public entity] benefit the public, but these benefits are typically incidental to the contract and do *not* create third-party beneficiary status." *City of Atlanta v. Benator*, 310 Ga. App. 597, 603 (2011). Thus, by identifying incidental benefits but not a clear intent of the parties to endow the Plaintiffs with third-party beneficiary status, the Plaintiffs have failed to state a breach of contract claim.

### 5.  The Plaintiffs' Negligent Misrepresentation Claims

The Plaintiffs allege counts of negligent misrepresentation, arguing the "Defendant owed a duty of reasonable care and competence to [the Plaintiffs], who reasonably relied upon the representation that her bar exam score was being accurately scored and reported," and that the Defendant breached that

33

T:\ORDERS\20\Heath\mtdtwt.docx

duty. (Hilliard Compl. ¶ 29.) The Defendant argues that it made no "affirmative misrepresentation" to the Plaintiffs, and that defeats their claims. (*See, e.g.*, Def.'s Br. in Supp. of Def.'s Mot. to Dismiss Pl. Hilliard's Compl., at 17.) In doing so, the Defendant relies heavily on the *Murray I* opinion, which found that without an affirmative misrepresentation between the defendants and the plaintiffs, the plaintiffs' claims lacked an essential element. *Murray I*, 378 F. Supp. 3d at 1251.

Under Georgia law, a claim for negligent misrepresentation requires: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1997). At this stage, accepting all facts pleaded and construing them in the Plaintiffs' favor, the Plaintiffs have sufficiently pleaded all of these elements. The Defendant's software was used by the OBA and GBBE "to scale the raw scores . . . , to report the scaled scores, and to communicate with applicants, including pass or fail letters." (Hilliard Compl. ¶ 19.) The Plaintiffs were foreseeable recipients of this information, and they "reasonably relied upon the representation that [their] bar exam score[s] [were] being accurately scored and reported." (*Id.* ¶ 29.) As a result of this reliance, the Plaintiffs have pleaded economic injuries proximately caused by the inaccurate reporting. (*Id.* ¶ 30.)

The only potential barrier to the Plaintiffs' negligent misrepresentation claim is whether, as recognized by the *Murray I* court, there exists a requirement of an "affirmative misrepresentation" to state a claim of negligent misrepresentation in Georgia.[8] However, after a review of the Georgia case law, this Court cannot conclusively state such a requirement exists. For example, the Defendant points to *Talton v. Arnall Golden Gregory, LLP* for the proposition that because the Plaintiffs never "directly or indirectly received any representation from [the Defendant] or received any representation that identified [the Defendant] as the source," the Plaintiffs' claims cannot proceed. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss. Pl. Heath's Compl., at 17 (citing 276 Ga. App. 21, 25 (2005)). This assertion claims too much. In fact, *Talton* indicates that the information provider can be liable to third parties who do not directly receive the representations: "professional liability for negligence extends to those persons, or the limited class of persons who the professional is *actually aware* will rely upon the information he prepared." 276 Ga. App. at 25 (internal punctuation omitted) (emphasis in original). In their Complaints, the Plaintiffs have alleged that the Defendant's software erroneously rescaled the raw scores, which led the OBA and GBBE to falsely report the Plaintiffs' scores. (Hilliard Compl. ¶ 20.) These allegations indicate the Defendant's software provided the OBA and GBBE with incorrect information that was

---

[8]    This argument was abandoned on appeal, and the Eleventh Circuit did not discuss or evaluate this argument in *Murray II*.

35

then reported to the Plaintiffs, and the Defendant's contract with the OBA and GBBE anticipated this reporting. (*Id.* ¶¶ 12, 20.) Under these facts, the Plaintiffs allege the Defendant's software provided the OBA and GBBE with incorrect information that they then relayed to the Plaintiffs, and the Plaintiffs foreseeably and reasonably relied upon this information in a manner that caused economic injury. Thus, accepting the Plaintiffs' pleaded facts as true, as this Court must at this stage, the Plaintiffs have stated a claim for negligent misrepresentation under Georgia law.

### 6.  The Plaintiffs' Claims for Attorneys' Fees

The Plaintiffs have also alleged that the Defendant has "acted in bad faith, been stubbornly litigious, and caused [the Plaintiffs] unnecessary trouble and expense," and they are therefore entitled to attorneys' fees under O.C.G.A. § 13-6-11. (Thomas Compl. ¶¶ 45–46.) Because this Court must accept these factual allegations as true, and the Plaintiffs have one underlying claim at this time, these derivative claims can proceed at this stage.

### IV.    Conclusion

For the reasons set forth above, the Plaintiffs' Motions to Remand [1:20-CV-3130, Doc. 11; 1:20-CV-3131, Doc. 12; 1:20-CV-3651, Doc. 7; 1:20-CV-3652, Doc. 5; 1:20-CV-3654, Doc. 5; 1:20-CV-3655, Doc. 5; 1:20-CV-3656, Doc. 5] are DENIED and the Defendant's Motions to Dismiss [1:20-CV-3130, Doc. 4; 1:20-CV-3131, Doc. 3; 1:20-CV-3651, Doc. 5; 1:20-CV-3652, Doc. 4; 1:20-CV-3654, Doc. 4; 1:20-CV-3655, Doc. 4; 1:20-CV-3656, Doc. 4] are GRANTED in part and

36

DENIED in part.

SO ORDERED, this 24 day of November, 2020.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge